1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PATEL | STILWELL, LLP**
ANDREW R. STILWELL, ESQ.      (CBN: 229469)
3160 Camino Del Rio South, Suite 313
San Diego, CA 92108
Telephone: (619) 940-6623
Email: AStilwell@PatelStilwell.com

Attorneys for RANDY D. PALMER and YOLANDA M. PALMER, Plaintiffs.

**UNITED STATES DISTRICT COURT**

**FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RANDY D. PALMER and YOLANDA M. PALMER, <br><br> Plaintiffs, <br><br> vs. <br><br> MTC FINANCIAL INC., DBA TRUSTEE CORPS; THE BANK OF NEW YORK MELLON AS TRUSTEE FOR CERTIFICATEHOLDERS OF THE CWABS INC, ASSET-BACKED CERTIFICATES, SERIES 2005-14; DITECH FINANCIAL, LLC, and DOES 1through 10, inclusive, <br><br> Defendant(s). | Case No. <br><br> COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF. <br><br> DEMAND FOR JURY TRIAL |

   Plaintiffs, RANDY D. PALMER and YOLANDA M. PALMER (jointly "Plaintiffs") alleges as follows:

///

///

*PATEL | STILWELL, LLP*
Attorneys at Law
San Diego, California

**JURISDICTION**

**Federal Question Jurisdiction**

1.     Plaintiffs asserts this Court's federal question jurisdiction, codified in 28 U.S.C. § 1331, on the basis that there are several questions arising under federal laws, including without limitation violations of the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.); Truth In Lending Act (15 U.S.C. §§ 1640-1641); Fair Credit Reporting Act (15 U.S.C. § 1681s-2), and the Internal Revenue Code regulating Real Estate Mortgage Investment Conduit (REMIC) Trust (26 U.S.C. §§ 860D, 860F, and 860G, as well as their corresponding Treasury Regulations).

**Diversity Jurisdiction**

2.     As a separate claim to, Plaintiffs' assertion of federal question jurisdiction, Plaintiffs assert federal diversity jurisdiction on the basis that at each Defendant is jurisdictionally diverse from Plaintiffs' California domicile, and the amount in controversy exceeds $75,000.00.

**Supplemental Jurisdiction**

3.     Additionally, Plaintiffs also assert this Court's supplemental jurisdiction over all issues of state law mentioned herein on the basis that those state issues arise from the same facts and circumstances as the acts alleged herein warranting federal jurisdiction over this Complaint.

**VENUE**

4.     The United States District Court for the Eastern District of California, Fresno Division is the appropriate and proper venue for this action, on the basis that all contracts signed by Plaintiffs and acts giving rise to a cause of action described herein were completed and committed in Fresno, California.

**PARTIES**

1.     Plaintiffs are, and was at all times mentioned herein, an individual resident of Fresno, California.  The real property that is the subject of this action is located at 8315 North Thyme Way, Fresno, CA 93720 (hereafter the "Property").

PATEL | STILWELL, LLP
Attorneys at Law
San Diego, California

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

2.      Defendant, MTC FINANCIAL INC., dba TRUSTEE CORPS (hereafter "MTC"), is a California corporation, who has been doing business within Fresno County, California at all times mentioned herein.  MTC is and was the acting Trustee under the Deed of Trust herein.

3.      Defendant, THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A. (hereafter "BNY"), is a Kentucky Foreign National Bank, with its principle place of business at 614 West Main Street, Suite 2600, Louisville, KY 4020, who also doing business at 400 South Hope Street, Suite 400, Los Angeles, CA 90071.  The BNY TRUST, is, and at all times herein mentioned was, a New York REMIC (Real Estate Mortgage Investment Conduit) trust as defined by 26 U.S.C. § 860D, and its corresponding treasury regulations.   Plaintiffs are informed and believes that the BNY TRUST is making claim as the holder and owner of the Note and current beneficiary of the Deed of Trust herein.

4.      Defendant, DITECH FINANCIAL, LLC, ("DITECH") is registered to do business in California and at all times herein did perform acts against Plaintiffs, and their principle place of business is located at 1100 Virginia Drive, Suite 100, Fort Washington, PA 19034.  Plaintiffs are informed and believe that DITECH is the loan servicer for the BNY TRUST, and acts on behalf of the BNY TRUST.

5.      Plaintiffs are informed and believe, and thereon alleges, that at all times herein mentioned, each Defendant designated herein is or was the agent, partner, employee, co-developer, joint-venturer, subcontractor, consultant, and/or supplier of each of the remaining Defendants, and was at all times herein mentioned, acting within the course and scope of said agency and employment. However, as explained below, none of the defendants were authorized to foreclose on the property.

///

///

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

PATEL | STILWELL, LLP
Attorneys at Law
San Diego, California

6.     Plaintiffs are informed and believe and thereon alleges that the Defendants and each of them, and DOES 1 through 10, inclusive, were in some manner negligently or otherwise tortuously responsible for the events and happenings hereinafter alleged, and that each are vicariously liable for the acts of each other.

7.     The true names and capacities of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiffs, who therefore sues said unknown Defendants, and each of them, by such fictitious names.  Plaintiffs will seek leave of court to amend this Complaint to insert the true names and capacities of fictitiously named Defendants when same has been ascertained.  Plaintiffs are informed and believe and, based upon such information and belief alleges, that each Defendant herein designated as a "DOE" herein is legally responsible in some manner for the acts, occurrences, damages and liabilities hereinafter alleged, and actively and passively caused and contributed to the various injuries and damages referred to herein.

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

**<u>The Loan Origination</u>**

8.     On July 11, 2005, Plaintiffs executed a promissory note (hereafter the "Note") in favor of America's Wholesale Lender (hereafter "AWL") in the sum of Five Hundred Twenty Thousand Dollars (U.S. $520,000.00).  At all times leading up to the execution of the Note, and at the time the Note was executed, AWL had represented to Plaintiffs that AWL was a corporation organized under the laws of the state of New York, and the lender on the loan.  Plaintiffs never received any information prior to the original filing of the complaint in this action that AWL was not a corporation organized under the laws of the state of New York, nor were Plaintiffs aware that AWL was not the actual lender on the loan.

///

///

///

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**PATEL | STILWELL, LLP**
Attorneys at Law
San Diego, California

9.     On July 11, 2005, Plaintiffs also executed aa deed of trust ("DoT"), which purported to secure the Note by the real property located at 8315 North Thyme Way, in the city of Fresno, California (the "Property").   At all relevant times, Plaintiffs have been the fee simple owner of the Property.

10.     The legal description for the Property is:

> LOT 35 OF TRACT NO. 4823, IN THE CITY OF FRESNO, COUNTY OF FRESNO, STATE OF CALIFORNIA, ACCORDING TO THE MAP THEREOF RECORDED IN BOOK 61, PAGES 86 AND 87 OF PLATS, FRESNO COUNTY RECORDS.

11.     At all relevant times, Plaintiffs have occupied the Property as their home and primary residence, and the Property consists of only one dwelling unit.

12.     The Note listed Plaintiffs as "Borrower" and AWL as "Lender."

13.     Plaintiffs are informed and believe and thereupon allege that AWL was not the actual funding lender to the Plaintiffs' loan, but acted instead as a "broker" to bring in anonymous outside funding from a third party to table-fund the loan proceeds described in the Note.

**The Deed of Trust**

14.     The DoT was recorded in the Fresno County Recorder's Office as document number 2005-0162069 on July 20, 2005.   The DoT and the Note are hereafter jointly referred to as the "Mortgage."   The Mortgage was made only for personal, family, or household purposes.

15.     Plaintiffs allege that this recording was done by AWL without reasonable grounds to believe in the validity of the DoT because it was the product of an illegal table-funded loan originated and perpetrated by AWL against Plaintiffs with reckless disregard for Plaintiffs' rights or for the economic damage that the DoT would cause to Plaintiffs' Property.   Plaintiffs therefore allege that the recording of the DoT does not qualify as privileged publications under California Civil Code section 47.

///

PATEL | STILWELL, LLP
Attorneys at Law
San Diego, California

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

16.    Plaintiffs were described as the "Borrower" in the Note, and the "Trustor" in the DoT.

17.    At that time, RECONTRUST COMPANY, N.A. was described as the "Trustee" in the DoT, and was not mentioned at all in the Note.

18.    MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC. ("MERS") was described in the DoT as the "Beneficiary," however, the DoT limited MERS's authority solely as "Nominee" for the Lender.

19.    Section 22 of the DoT states in pertinent part:

> "Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument …. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) the failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence."

**Securitization and Third-Party Table-Funding**

20.    From 2000 to 2006, lenders across the nation, including AWL, originated trillions in mortgage loans.  The ballistic ascent of the lending industry's ability to originate so many mortgages was primarily due to the ability to "securitize" the mortgages into privately held investment conduits that allowed them to draft their own underwriting guidelines.  No longer hindered by the rigors of federal agency underwriting guidelines, the lending industry could literally underwrite any type of loan they wanted, and they did.

PATEL | STILWELL, LLP
Attorneys at Law
San Diego, California

21.     "Securitization" is the process of pooling mortgages to be sold in bulk to special purpose entities ("SPE"), usually REMIC Trusts, that supported the issuance of "Mortgage-Backed Securities" to the security markets for sale to the general public.  Once the mortgages were securitized, the mortgages were no longer owned by the lender, instead being owned by the SPE, and were taken off, or never registered under, the originating "lender's" balance sheet as sold.

22.     Although securitization was originally created as a post-origination transaction where bundles of mortgages were pooled together and sold off in bulk to SPEs, as demand grew for mortgage-back securities in the market place, originators started creating SPE's prior to any loan being originated.  These completely separate entities could now anonymously fund loans based off of any underwriting guidelines their lending sponsors would allow.  Utilizing originators of all varieties, these SPEs were the single largest funding sources for residential mortgages in the recent mortgage boom.

23.     In these "stranger funded" transactions, the originators could call themselves "lenders", and then draw the loan funds from these pre-funded SPEs. These "front-lenders" acted in effect as a broker, that facilitated these stranger-funded loans, maintaining only a profit yield spread premium and the servicing rights to the mortgage as it passed through the broker to the unnamed surrogate SPE.

24.     The process of stranger funding loans is commonly known as "table-funding."  In a table-funding transaction, the brokering originator brings a third-party funding source (usually unknown to the borrower) to the closing table at escrow to complete the transaction.

25.     Although table-funding is legal for all commercial transactions in California, there has been a long-standing policy in this state against table-funding residential mortgages.  To combat residential table funding, the Legislature specifically made the encumbering of residential property with table-funded loans

illegal with the passage of AB 1203 in 1998, which became California Business and Professions Code section 10234.

26.    Under California Business and Professions Code § 10234, any party licensed with the California Department of Real Estate cannot record a deed of trust in their own name as "lender" if the loan is table-funded and the encumbered property is residential in character.

27.    Plaintiffs are informed and believe, and thereupon alleges, that the funding for the Note was from a pre-funded SPE, and the Mortgage was a table-funded loan.    Further, the Property encumbered by the DoT is a residential property.

28.    Plaintiffs are informed and believe, and thereupon alleges, that on July 11, 2005, AWL (1) was registered with the California Department of Real Estate at the time of the Mortgage's origination, (2) listed itself as "Lender" in the DoT, (3) table-funded the loan from a pre-funded SPE, and recorded the DoT against the Property with AWL described as the "Lender" therein in violation of California Business and Professions Code § 10234.

**The Deed of Trust is Void as an Illegal Contract**

29.    The recording of a deed of trust on a residential property in California is illegal when the party listed as the "lender" in the deed of trust is not the funding party of the mortgage.

30.    At the time of the Mortgage's origination, AWL was registered with the then California Department of Real Estate as an originator indicating that they were in the business, amongst other things, of originating loans in California. AWL, in its capacity as a registered loan originator in California, by its licensure subjected itself to the restrictions of California Business and Professions Code section 10234, which banned encumbering residential property with table-funded loans in California.

///

PATEL | STILWELL, LLP
Attorneys at Law
San Diego, California

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

31.     However, AWL listed itself as "Lender" in the recorded DoT, even though it was acting as an originator to table fund the Note from a pre-funded SPE or other source independent of AWL, thereby violating California Business and Professions Code section 10234.

32.     The DoT herein, violated Business and Professions Code section 10234 is an illegal contract under California Civil Code sections 1592 and 1608, because it is the object and consideration to an illegal transaction, i.e. the illegal encumbering of California residential property with table-funded mortgages. The DoT therefore became void, and otherwise unexercisable, on its recording date, which was July 20, 2005.

33.     Therefore, the Note has been unsecured since July 20, 2005, and without a valid DoT on title, neither of the Defendants herein have any authority to foreclose on the Property.

**Unauthorized and Undisclosed Assignment of the Deed of Trust**

The Assignment

34.     On September 26, 2011, MERS, on its own behalf and not in its representative capacity, executed an Assignment of Deed of Trust (hereafter "Assignment"), which purported assigned the DoT to from AWL to the BNY TRUST.  However, the DoT was void at that time.

35.     Also, MERS executed the Assignment in its own capacity, and not in the capacity listed in the DoT as "nominee for [AWL], its successors and assigns."

36.     MERS cannot assign the DoT in its own capacity, but instead has to assign it in its capacity as "nominee for the Lender."  According to the DoT:

> "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is **acting solely as a nominee for Lender** and Lender's successor and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS." (**emphasis added**).

PATEL | STILWELL, LLP
Attorneys at Law
San Diego, California

37. The DoT further narrowly defines MERS's status as:

"The beneficiary of this Security Instrument is MERS (**solely as nominee for the Lender** and the Lender's successors and assigns) and the successors and assigns of MERS." (**emphasis added**).

38. The DoT then narrows MERS's authority to act as follows:

"Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (**as nominee for Lender** and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender, including, but not limited to, releasing and canceling this Security Instrument." (**emphasis added**)

39. Nowhere in the Assignment is there any mention of MERS acting in any other capacity than in its own name, and never identifies MERS as a nominee or agent for AWL. In fact, the body of the Assignment states "the undersigned holder of a Deed of Trust (herein 'Assignor')" and then is executed as "MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC." without any acknowledgement of their capacity as nominee.

40. By its very terms, the Assignment is purporting that MERS, not AWL, is the holder of the Deed of Trust, and MERS, in its individual capacity, (instead of "on behalf of" or "as nominee of" AWL) executed the Assignment.

41. Under the terms of the DoT, MERS had no power outside of its capacity as nominee (i.e., in its own right) to assign the Note. By its own terms, MERS was never a party to the Note, only a beneficiary of the DoT, and only in the capacity of nominee was MERS a beneficiary. Yet, by the terms of the Assignment, MERS did assign the DoT to the BNY TRUST, not as nominee to AWL, but simply as MERS individually.

///

///

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**PATEL | STILWELL, LLP**
Attorneys at Law
San Diego, California

42.     Section 3402 of the California Uniform Commercial Code states that a representative party who signs in its individual capacity is not binding the principle.  In other words, is of no effect and void.  MERS cannot have assigned the DoT individually, and therefore the Assignment is void because it transferred nothing.

<u>Failure to Disclose</u>

43.     Although the Note and Deed of Trust both state that the Mortgage can be transferred numerous times without notice, the California Statute of Frauds (codified in California Civil Code section 1624) requires that an assignment of an interest in real property (which includes the encumbrance contained within the DoT) must be made in writing and recorded in the recorder' office of the county in which the real property is located.

44.     Further, the federal Truth In Lending Act requires that when a mortgage is assigned, the assignee is required to notify the borrower within thirty (30) days.

45.     According to public records of Fresno, the DoT was purportedly assigned to the BNY TRUST on September 26th, 2011, however, the BNY TRUST never provided Plaintiffs any written notice whatsoever of the assignment leaving Plaintiffs in the dark as to the identity of the Mortgage's holder.  The BNY TRUST was also closed by operation of Federal law to any transfers of interest back in 2005. The assignment that was executed in 2011, however, was executed by MERS as a nominee for AWL, who was incapacitated at the time of the execution of the assignment instrument, rendering MERS an incapacitated agent/nominee for AWL.

**The Current Foreclosure Status**

46.     Plaintiffs are informed and believe that, at all relevant times, DITECH has asserted to be the loan servicer on behalf of the BNY Trust.

///

PATEL | STILWELL, LLP
Attorneys at Law
San Diego, California

PATEL | STILWELL, LLP

Attorneys at Law
San Diego, California

The First Notice of Default

47.   On or about October 24th, 2011, in spite of the fact that the DoT was voided by its recording previously, and with full knowledge of the table-funded pre-securitized character of the Note, the BNY TRUST instructed RECONTRUST COMPANY, N.A., the predecessor-in-interest to DITECH, to cause to be executed and recorded a Notice of Default and Election to Sell Under Deed of Trust (the "First NoD") against the Property.

48.   The First NoD was executed by ARAYA DHANASOPON, Assistant Vice President, and recorded in the Office of the County Recorder for Fresno County on October 27, 2011 as Document No. 2011-0145541.  Plaintiffs allege that this recording was done by MTC, or its predecessor-in-interest, at the behest of the BNY TRUST without reasonable grounds to believe that MTC, or its predecessor-in-interest, had the authority to file the First NoD, and therefore executed and recorded the First NoD with reckless disregard for Plantiffs' rights or for the economic damage that the First NoD would cause to Plantiffs' Property. Plaintiffs therefore allege that the execution and recording of the First NoD do not qualify as privileged publications under California Civil Code sections 47 and 2924.

49.   At the time of the execution and recording of the First NoD, the DoT had been void for six (6) of years.  Additionally, since California Business and Professions Code section 10234 became effective in 1998 (more than seven (7) years prior), each and every Defendant herein was aware of the law and the facts that rendered the DoT void and unenforceable.

50.   Yet, with that knowledge and notice, the First NoD was executed and recorded without any authority to do so under the void DoT.  Therefore, any presumption granted by law by the filing of a Notice of Default under Civil Code section 2924 et. seq. is negated by this critically defective First NoD.  Further, Plaintiffs affirmatively refute the raising of the California Civil Code § 2924

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

presumption, and objects to the NoD being utilized as evidence of such presumption.

51.   The First NoD is also critically deficient substantively because of the following nonexclusive list of major defects:

a.   The DoT was rendered void by its recording on July 20, 2005, and therefore DITECH, the BNY TRUST and MTC, were not authorized to file, or rely upon, the First NoD because the loan was rendered unsecured;

b.   The First NoD states that MERS, as nominee for the keys, is the beneficiary of the DoT, but does not list DITECH as the successor in interest to the DoT or the Note;

c.   The First NoD, by its own terms, accelerates the Mortgage under paragraph 22 of the DoT, however, DITECH failed to give the required 30-day notice under that provision of the DoT;

d.   The First NoD's supporting declaration is void under California Civil Code section 2923.17;

e.   The First NoD contains a false statement and/or a legal presumption that the trustee received a written declaration of default and demand for sale, when in fact the trustee never received such declaration and demand as required by California foreclosure laws;

f.   The AWL had already sold off the Note, the DoT through the securitization process by that time.  MERS's authority to act on behalf of the AWL ended when the Mortgage was sold off, to the SPE; and

52.   Neither DITECH, nor MTC, nor its predecessor-in-interest, had any right to collect on the Note and therefore did not have authority to execute and record the First NoD.

The Second Notice of Default

53.   On March 24, 2015, MTC, purportedly as "a Duly Appointed Successor Trustee" of the DoT, and on behalf of and by the direction of the BNY

PATEL | STILWELL, LLP
Attorneys at Law
San Diego, California

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

TRUST, caused to be executed a Notice of Default and Election to Sell Under Deed of Trust (the "Second NoD").  The Second NoD was executed by AMY LEMUS, Authorized Signor for MTC, and recorded in the Office of the County Recorder for Fresno County on March 25, 2015 as Document No. 2015-0034799-00.

54.   The Second NoD is critically deficient because of the following nonexclusive list of major defects:

a.   The DoT was void at the time (due to the illegal table funding), negating the DoT as a security instrument encumbering the Property.

b.   MTC was not a duly appointed successor trustee because MTC had been appointed successor trustee by the BNY TRUST who was not at that time, or any time thereafter, the beneficiary or lender under the DoT because the Assignment failed to transfer the DoT to the BNY TRUST and the DOT was void. Therefore, the BNY TRUST could not substitute MTC as a trustee of the DoT because the BNY TRUST did not have the authority to do so.

55.   Despite the fact that there was not a valid DoT in place at the time, the Second NoD was facially deficient in the following ways:

a.   The Second NoD, by its own terms, accelerates the Mortgage under paragraph 22 of the DoT, however, both AWL and the BNY TRUST failed to give the required 30-day notice under that provision of the DoT; and

b.   The Second NoD's supporting declaration was nearly a year old, and based off an investigation by GREEN TREE SERVICING LLC, not MTC as required by the California Home Owner's Bill of Rights.  The declaration is stale, improper, and does not conform to the requirements under Civil Code section 2923.5, subd. (b).

56.   Since the DoT was void since July 20, 2005, neither the BNY TRUST or MTC had any right to file the Second NoD, because the Note was unsecured, and had been for over ten years.  MTC, as the BNY TRUST's agent, did not have authority to execute and record the Second NoD. Further, any presumption granted

PATEL | STILWELL, LLP

Attorneys at Law
San Diego, California

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

by law by the filing of a Notice of Default under Civil Code section 2924 et. seq. is negated by the critically defective Second NoD herein.

Notice of Trustee Sale

57.   On December 3, 2015, MTC, on behalf of and by the direction of the BNY TRUST, caused to be executed a Notice of Trustee's Sale (the "NoTS"). The NoTS was executed by JOSEPH BARRAGAN, as Authorized Signatory for MTC, and recorded in the Office of the County Recorder for Fresno County on December 4, 2015 as Document No. 2015-0153883-00. However, the DoT was void at this time, and therefore MTC was not a trustee, nor did MTC have any authority to make the NoTS or record it against the Property's title.

The Trustee's Sale

58.   On or about December 23, 2016, MTC, at the direction of and on behalf of the BNY TRUST, sold the Property at a trustee's sale through nonjudicial foreclosure. Plaintiffs are informed and believe and thereupon alleges that the BNY TRUST purchased the Property in a full credit bid. Trustee conducted this sale in reliance on the DoT, which was void since July 20, 2005. Plaintiffs thereby allege that neither MTC, nor the BNY TRUST, were authorized to conduct the trustee's sale herein.

**Tender**

59.   Within the entirety of this complaint, and as to all causes of action and factual allegations therein, Plaintiffs are alleging that the Defendants herein, and each of them, never had any actual authority or right to execute or record the Assignments or NoDs against the Property, nor to negotiate the Mortgage under color of foreclosure mitigation, due to a void DoT. As such, where Plaintiffs are challenging the authority to foreclose based on allegedly void documents, Plaintiffs are not required to tender.

///

///

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**CAUSE OF ACTION ONE**
**Violation of the Fair Debt Collection Practices Act**
**(15 U.S.C. 1692 et. seq.)**
**Against the BNY TRUST and DITECH**

60.   Plaintiffs incorporate herein by this reference all prior allegations made herein above.

61.   Congress passed the Fair Debt Collection Practices Act ("FDCPA") in 1977 wherein 15 U.S.C. § 1692e stated purpose of eliminating "abusive debt collection practices," ensuring "that those debt collectors who refrain from using abuse debt collection practices are not competitively disadvantaged," and promoting "consistent State action to protect consumers against debt collection abuses."   In furtherance of these purposes, the FDCPA bans a variety of debt collection practices and allows individuals to sue offending debt collectors.

62.   The Note, which is included in the Mortgage, is a debt under the Fair Debt Collections Practices Act.

63.   DITECH is a debt collector under 15 U.S.C. § 1693a as DITECH uses instrumentalities of interstate commerce or mails in any business the principle purpose of which is the collection of a debt and regularly collects or attempts to collect, directly or indirectly, debts owned or due or asserted to be owed or due to others, including the BNY TRUST.

64.   The BNY TRUST is the principle to DITECH, both of which stand joined in an agency relationship, and as such, the BNY TRUST is vicariously liable for the acts of its agent, DITECH, for the acts that DITECH took on the BNY TRUST's behalf, while acting in the scope of that agency, which was the collection of the debt described in the Note.

65.   DITECH is not the owner or creditor of the Note, nor does DITECH have any ownership interest in the Property.

66.   DITECH, at the direction of and on behalf of the BNY TRUST did violate two provisions of the FDCPA, specifically 15 U.S.C. §§ 1692e and 1692f,

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

PATEL | STILWELL, LLP
Attorneys at Law
San Diego, California

in that (1) they used false, deceptive, or misleading representations or means in connection with the collection of the Note; and (2) they used unfair or unconscionable means to collect or attempt to collect a debt by (i) claiming that the note is secured when it is not, (ii) claiming that the Property is subject to foreclosure when it is not, (iii) threatening to foreclose against the Property if payment is not made when they do not have a valid security interest in the Property to execute, (iv) filing of the NoD against the title of the Property when they had no authority to do so.

67.     Plaintiffs have repeatedly disputed DITECH's and the BNY TRUST's claims that the Property is secured, yet DITECH, at the direction of and on behalf of the BNY TRUST, continued their unauthorized, unfair, and unconscionable conduct against Plaintiffs.

68.     DITECH at the direction of and on behalf of the BNY TRUST, unlawfully, unfairly, and unconscionably put the screws to Plaintiffs, and as a direct and proximate result of DITECH's conduct, at the direction of and on behalf of the BNY TRUST, Plaintiffs have sustained economic damage, including without limitation, the devaluation of the Property due to the filing of the NoD, in an amount to be proven at trial.

**CAUSE OF ACTION TWO**
**Violation of the Truth In Lending Act**
**(15 U.S.C. § 1641)**
**Against the BNY TRUST**

69.     Plaintiffs incorporate herein by this reference all prior allegations made herein above.

70.     15 U.S.C. § 1641, subd. (g) requires the recipient of a residential mortgage by assignment to notify the borrower in writing within thirty (30) days of when the loan was transferred.

///

///

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

71.     The BNY TRUST has asserted to Plaintiffs, through DITECH, that it was the recipient of the Mortgage by Assignment from AWL, on September 26th, 2011.

72.     Plaintiffs have never received any written notification from the BNY TRUST that the Mortgage was transferred to the BNY TRUST as required under 15 U.S.C. § 1641(g), and therefore Plaintiffs is informed and believe and thereupon alleges that the BNY TRUST failed to notify Plaintiffs that the Mortgage was transferred to the BNY TRUST by assignment with thirty days of that transfer.

73.     During all times mentioned within this cause of action, Plaintiffs has maintained the Property address as Plaintiffs' mailing address, and has kept the Property as Plaintiffs' primary residence.  There has not been any time during the times mentioned within this cause of action, where Plaintiffs maintained any other mailing address for purposes of notice regarding the Mortgage.

74.     The Mortgage is a mortgage on a residential property within the scope of the Truth In Lending Act.

75.     As a direct and proximate result of the BNY TRUST's failure to notify Plaintiffs of the assignment, Plaintiffs have suffered actual damages, including without limitation, the cost to hire of an attorney to find out the ownership status of the Mortgage, delinquency, and negative credit reporting in an amount to be proven at trial.

76.     Additionally, and as a separate measure of damages, the BNY TRUST is liable for statutory damages equal to no less than $400.00 and not greater than $4,000.00 per violation.

77.     Plaintiffs have incurred reasonable attorney's fees and costs in prosecuting this claim, and is entitled to an award of attorney's fees and cost therefrom.

///

///

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**PATEL | STILWELL, LLP**
Attorneys at Law
San Diego, California

**CAUSE OF ACTION THREE**
**Violation of the California Rosenthal Act**
**(Cal. Civ. Code § 1788.1)**
**Against DITECH and [the BNY TRUST]**

78.     Plaintiffs incorporate herein by this reference all prior allegations made herein above.

79.     The California Rosenthal Act was enacted "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts. Section 1788.17 of the Rosenthal Act also includes violations of the FDCPA in a separate violation of state law.

80.     DITECH and the BNY TRUST are "debt collectors" as defined by the Rosenthal Act because they both regularly, in the ordinary course of its business, on behalf of themselves or others, including each other, engages in debt collection.

81.     The Note herein is a debt as defined by the Rosenthal Act because the Note is money, property or their equivalent which is due and owing or alleged to be due or owing from the BNY TRUST and DITECH, on the BNY TRUST's behalf and at the BNY TRUST's direction.

82.     Additionally, and as a separate allegation of culpability, the BNY TRUST is the principle to DITECH, both of which stand joined in an agency relationship, and as such, the BNY TRUST is vicariously liable for the acts of its agent, DITECH, for the acts that DITECH took on the BNY TRUST's behalf, while acting in the scope of that agency, which was the collection of the debt described in the Note.

83.     DITECH, at the direction of and on behalf of the BNY TRUST did violate Rosenthal Act, in that (1) they used false, deceptive, or misleading representations or means in connection with the collection of the Note; and (2) they used unfair or unconscionable means to collect or attempt to collect a debt by

PATEL | STILWELL, LLP
Attorneys at Law
San Diego, California

(i) claiming that the note is secured when it is not, (ii) claiming that the Property is subject to foreclosure when it is not, (iii) threatening to foreclose against the Property if payment is not made when they do not have a valid security interest in the Property to execute, (iv) filing of the NoD against the title of the Property when they had no authority to do so, (v) violating the California Homeowner Bill of Rights section 2924.17.

84.    Plaintiffs have repeatedly disputed DITECH's and the BNY TRUST's claims that the Property is secured, yet DITECH, at the direction of and on behalf of the BNY TRUST, continued their unauthorized, unfair, and unconscionable conduct against Plaintiffs.

85.    DITECH at the direction of and on behalf of the BNY TRUST, unlawfully, unfairly, and unconscionably put the screws to Plaintiffs, and as a direct and proximate result of DITECH's conduct, at the direction of and on behalf of the BNY TRUST, Plaintiffs have sustained economic damage, including without limitation, the devaluation of the Property due to the filing of the NoD, in an amount to be proven at trial.

**CAUSE OF ACTION FOUR**
**Violation of the California Unfair Competition Law**
**(Cal. Bus. & Prof. Code § 17200 et. seq.)**
**Against All Defendants**

86.    Plaintiffs incorporate herein by this reference all prior allegations made herein above.

87.    California's Unfair Competition Law ("UCL") may be brought by a person who has suffered injury in fact and has lost money or property as a result of unfair competition, which is defined as any "unlawful, unfair or fraudulent business act or practice" by California Business and Professions Code 17200.

///
///
///

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

PATEL | STILWELL, LLP
Attorneys at Law
San Diego, California

**Unlawful Acts by AWL, for which the BNY TRUST is liable for as successor in interest**

88.     AWL violated California Business and Professions Code section 10234 by table funding a residential mortgage after January 1, 1998, in that AWL, while a California licensed mortgage broker and acting in that capacity, did encumber residential property in California with the DOT, where in AWL listed itself as "lender" when it was not the funding source for the underlying table-funded note in direct contravention of section 10234.

89.     AWL caused a void instrument, the DoT herein, with full knowledge of its illegal character, to be recorded in the County Recorder's Office for Fresno County in violation of California Penal Code sections 115.5 and 532 *et. seq*.

90.     By recording the illegal and void DoT, AWL also slandered the title to Plaintiffs' Property.

91.     Plaintiffs allege that by engaging in the above described acts and/or practices as alleged herein, AWL has violated the above described California laws and those violations are therefore per se violations of the UCL.

92.     Plaintiffs allege the AWL's misconduct, as alleged herein, gave, and have given, AWL an unfair competitive advantage over their competitors, and the scheme implemented by AWL as described herein is and was the result of unfair business practices designed to enrich AWL to the illegal detriment of Plaintiffs.

93.     As a direct and proximate cause of AWL's illegal table funding and recording of the void DoT, Plaintiffs has been economically damages including without limitation the devaluation of Plaintiffs' Property by the void and illegal encumbrance the DoT creates on the title to the Property, the inhibition the encumbrance has caused Plaintiffs in acquiring other lending secured by the Property, in an amount to be proven at trial.

94.     By reason of the foregoing, the BNY Trust, as successor to AWL have been unjustly enriched and should be required to disgorge its illicit profits and/or

PATEL | STILWELL, LLP
Attorneys at Law
San Diego, California

make restitution to Plaintiffs, and/or be enjoined from continuing in such practices pursuant to California Business and Professions Code sections 17203 and 17204.

95.     The harm AWL and now the BNY Trust has brought upon Plaintiffs was done in the regular course of business for AWL and the BNY Trust, and has been suffered by thousands of California Homeowners.  The harm to Plaintiffs, and other of the public, outweighs the utility to AWL's and the BNY Trust's policy and practice, because these policies and practices constitute unlawful business practices or acts within the meaning of Business and Professions Code section 17200.  Further, the ongoing practice by AWL, and/or its successors and assigns including the BNY Trust, of illegally encumbering residential property in California with table-funded mortgages threatens an incipient violation of consumer laws, or violates the policy and spirit of such laws, significantly threatening competition in the residential lending industry in the state.

96.     AWL's and the BNY Trust's unfair, unlawful, and fraudulent business practices of recording illegal deeds of trust, and placing void encumbrances on borrower's properties presents a continuing threat to members of the public in that other consumers will be defrauded into believing their loans are secured when they are not, which will have a chilling effect on the borrower ability to acquire future and further secured lending against their property as they so desire.

97.     Plaintiffs have no other adequate remedy of law, and is therefore entitled to injunctive relief and attorney's fees as available under the law.

**Unlawful Practices by DITECH**

98.     DITECH violated California Civil Code section 2923.17 after January 1, 2013, in that DITECH used a false declaration, filled with inaccuracies and lies, when DITECH filed the NoD's, which also violated Penal Code section 115.5 and 532 *et. seq.* by recording a false document onto public record.

*///*

PATEL | STILWELL, LLP
Attorneys at Law
San Diego, California

PATEL | STILWELL, LLP
Attorneys at Law
San Diego, California

99.    DITECH violated the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et. seq.) by attempting to collect a debt on behalf of the BNY TRUST, all while knowing or having no reasonable grounds for believing that the BNY TRUST was not the owner of the debt.  The debt was purportedly transferred to the BNY TRUST on September 26, 2011 by assignment, however that transfer date is in excess of 90 days of the official closing date of the BNY TRUST, which is a prohibited transaction under Internal Revenue Code section 860F (26 U.S.C. §860F) and its corresponding Treasury Regulations, and by law void.  DITECH was aware of the Internal Revenue Code describing such a transfer as a prohibited transaction, and therefore had no reason to believe that the BNY TRUST was the owner of the debt that DITECH attempted to collect upon on behalf of and at the direction of the BNY TRUST.  By proceeding in spite of this knowledge or lack of reasonable belief, DITECH attempted to collect a debt under false and fraudulent pretenses to the detriment of Plaintiffs, and in direct violation of the Federal Debt Collection Practices Act.

100.    DITECH violated the California Rosenthal Act (Cal. Civ. Code § 1877.1) by attempting to collect a debt on behalf of the BNY TRUST, all while knowing or having no reasonable grounds for believing that the BNY TRUST was not the owner of the debt.  The debt was purportedly transferred to the BNY TRUST on September 26, 2011 by assignment, however that transfer date is in excess of 90 days of the official closing date of the BNY TRUST, which is a prohibited transaction under Internal Revenue Code section 860F (26 U.S.C. §860F) and its corresponding Treasury Regulations, and by law is rendered void. DITECH was aware of the Internal Revenue Code describing such a transfer as a prohibited transaction, and therefore had no reason to believe that the BNY TRUST was the owner of the debt that DITECH attempted to collect upon on behalf of and at the direction of the BNY TRUST.  By proceeding in spite of this knowledge or lack of reasonable belief, DITECH attempted to collect a debt under

false and fraudulent pretenses to the detriment of Plaintiffs, and in direct violation of the Federal Debt Collection Practices Act.

101.   DITECH violated California Penal Code sections 518, 519, and 520 by extorting and/or exerting illegal economic coercion against, in that DITECH was foreclosing without authorization (due to a void DoT and the BNY TRUST's failed transfer), DITECH's attempt to collect a debt was illegal (violating the Fair Debt Collection Practices Act and the California Rosenthal Act), and therefore the coercion placed upon Plaintiffs by DITECH was illegal pressure and duress to the level of extortion and/or economic coercion.

102.   DITECH violated California Civil Code sections 1569 and 1570 by placing duress and exerting menace against Plaintiffs, in that DITECH was threatening to foreclose of the Property, when in fact they did not have the authority due to the void DoT and the failed assignment to the BNY TRUST as plead herein. Plaintiffs did not know at the time that the DoT was void, nor that DITECH lacked the authority to foreclose.

103.   Plaintiffs allege that by engaging in the above described acts and/or practices as alleged herein, DITECH has violated the above described federal and state laws and those violations are therefore per se violations of the UCL.

104.   Plaintiffs allege the DITECH's misconduct, as alleged herein, gave, and have given, DITECH an unfair competitive advantage over their competitors, and the scheme implemented by DITECH as described herein is and was the result of unfair business practices designed to enrich DITECH to the illegal detriment of Plaintiffs.

105.   As a direct and proximate cause of DITECH's illegal acts, Plaintiffs have been economically damages including without limitation the devaluation of Plaintiffs' Property by the unauthorized and false NoD being recorded on the title to the Property, the inhibition the encumbrance has caused Plaintiffs in acquiring other lending secured by the Property, in an amount to be proven at trial.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

106.   By reason of the foregoing, DITECH has been unjustly enriched and should be required to disgorge its illicit profits and/or make restitution to Plaintiffs, and/or be enjoined from continuing in such practices pursuant to California Business and Professions Code sections 17203 and 17204.

107.   The harm DITECH has brought upon Plaintiffs was done in the regular course of business for DITECH, and has been suffered by thousands of California Homeowners.  The harm to Plaintiffs, and other of the public, outweighs the utility to DITECH's policy and practice, because these policies and practices constitute unlawful business practices or acts within the meaning of Business and Professions Code section 17200.  Further, the ongoing practice by DITECH of illegally table-funding residential mortgages threatens an incipient violation of consumer laws, or violates the policy and spirit of such laws, significantly threatening competition in the residential lending industry in the state.

108.   DITECH's unfair, unlawful, and fraudulent business practices of recording illegal deeds of trust, and placing void encumbrances on borrower's properties presents a continuing threat to members of the public in that other consumers will be defrauded into believing their loans are secured when they are not, which will have a chilling effect on the borrower ability to acquire future and further secured lending against their property as they so desire.

109.   Plaintiffs have no other adequate remedy of law, and is therefore entitled to injunctive relief and attorney's fees as available under the law.

**Unlawful Acts of the BNY TRUST**

110.   Plaintiffs hereby incorporate fully by this reference paragraphs 86 through 109 herein to this section of this cause of action.

111.   The BNY TRUST is allegedly the successor in interest to the Note, and although disputed by Plaintiffs for the reasons stated herein above in this cause of action, and as pleading in the alternative, if the BNY TRUST is determined to the be successor in interest to the Mortgage, then the BNY TRUST assumes all

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

PATEL | STILWELL, LLP
Attorneys at Law
San Diego, California

responsibility and liabilities as a successor in interest for its predecessor in interest, AWL, who violated California law multiple times as herein above described.

112.   The BNY TRUST is the principle to DITECH, both of which stand joined in an agency relationship, and as such, the BNY TRUST is vicariously liable for the acts of its agent, DITECH, for the acts that DITECH took on the BNY TRUST's behalf, while acting in the scope of that agency, which was the collection of the debt described in the Note.

113.   As a proximate cause of the BNY TRUST's directing DITECH's illegal actions against Plaintiffs, and as a proximate cause of AWL's illegal actions against Plaintiffs, for which the BNY TRUST is alternatively alleged to be responsible for a purported successor in interest to the Mortgage, Plaintiffs has been economically injured, including without limitation, the devaluation of Plaintiffs' Property by the illegal encumbrance of the void DoT and the unauthorized recording of the NoD, in an amount to be proven at trial.

**CAUSE OF ACTION FIVE**
**Cancelation Of Instrument**
**(Statutory Citation)**
**Against All Defendants**

114.   Plaintiffs hereby reincorporate all of the previously numbered paragraphs into this cause of action as if they were each individually pled herein.

**Cancelation of the Assignment**

115.   There is in existence a certain written instrument which purports to be an Assignment of Deed of Trust (the "Assignment"), purportedly transferring the DoT from AWL to the BNY TRUST. The form and contents of the Assignment are as set out in the copy of it which is attached to this complaint as Exhibit A and incorporated by reference.

116.   On September 26, 2011, the Assignment was recorded in the County Recorder's Office for Fresno County as Document No. 2011-0135561-00.

///

PATEL | STILWELL, LLP
Attorneys at Law
San Diego, California

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

117.   The DoT is a three-party contract between Plaintiffs, AWL, and RECONTRUST COMPANY, N.A., and Plaintiffs is an actual contracting party to the DoT, and as such has standing to challenge the Assignment.

118.   The Assignment purports to transfer the DoT to the BNY TRUST on September 26, 2011.   However, the BNY TRUST had an official closing date of March 30, 2005 (pursuant to the BNY TRUST's Pooling & Servicing Agreement published at www.sec.gov/edgar, a government publication).   Under Internal Revenue Code section 860F (26 U.S.C. § 860F) and its corresponding Treasury Regulations, it is a prohibited transaction to transfer a mortgage to a REMIC trust more than 90 days after its official closing date, regardless of which state the REMIC trust was created in.   Additionally, it is well settled law that the subject of a prohibited transaction is void, not voidable.

119.   Because the Assignment is the subject of a prohibited transaction, as described herein, the Assignment is void.

120.   The Assignment creates serious injury to Plaintiffs' title in the Property as it has placed a cloud on title, and an unauthorized stranger to the Mortgage in a place of creditor against Plaintiffs.   This void assignment is proximately causing diminution in value to the Property, as well as causing other damages in an amount and degree proven at trial.

121.   Plaintiffs seek this Court's exercise of its equitable powers to confirm the Assignment is void, cancel the instrument as without any effect.

**Cancelation of Deed of Trust**

122.   There is in existence a certain written instrument which purports to be a Deed of Trust (the DoT described herein above), purportedly securing the Note to the Property. The form and contents of the DoT are as set out in the copy of it which is attached to this complaint as Exhibit B and incorporated by reference.

123.   On July 20, 2005, the DoT was recorded in the County Recorder's Office for Fresno County as Document No. 2005-0162069.

PATEL | STILWELL, LLP
Attorneys at Law
San Diego, California

124.   The DoT is a three-party contract between Plaintiffs, AWL, and RECONTRUST COMPANY, N.A., and Plaintiffs is an actual contracting party to the DoT, and as such has standing to challenge the Assignment.

125.   The DoT encumbers California residential property to a table-funded mortgage in violation of California Business and Professions Code section 10234 as described herein above.  The DoT is therefore the singular subject of an illegal transaction, and was given as illegal consideration under California Civil Code sections 1596 and 1608.  The DoT is therefore void.

126.   The DoT creates serious injury to Plaintiffs' title in the Property as it has placed a cloud on title, and a substantial encumbrance on the value of the Property.  This void DoT is proximately causing diminution in value to the Property, as well as causing other damages in an amount and degree proven at trial.

127.   Plaintiffs seek this Court's exercise of its equitable powers to confirm the DoT is void, cancel the instrument as without any effect.

**Cancellation of Second Notice of Default**

128.   There is in existence a certain written instrument which purports to be the second NoD. The form and contents of the second NoD are as set out in the copy of it which is attached to this complaint as Exhibit C and incorporated by reference.

129.   On March 25, 2015, the second NoD was recorded in the County Recorder's Office for Fresno County as Document No. 2015-0034799-00.

130.   The Second NoD was executed by MTC's predecessor-in-interest, RECONTRUST COMPANY, N.A., who is not the authorized trustee under the DoT, because the DoT is void as illegal, and the Assignment to the BNY TRUST is void as a prohibited transaction.  MTC was at all times regarding the second NoD acting under the principle agent relationship between DITECH and the BNY TRUST.  The BNY TRUST had no authority because the void DoT rendered the Note unsecured at the time of its recording, and the Note never transferred to the

PATEL | STILWELL, LLP
Attorneys at Law
San Diego, California

BNY TRUST because the prohibited transaction stopped its transfer at its inception. Therefore, AWL still is the actual rightful party to execute the second NoD, which MTC, or its predecessor-in-interest, had no authorization to act for when it executed and recorded the second NoD.

131. The second NoD also contains a false statement that the trustee received a written declaration of default and demand for sale, when in fact the trustee never received such declaration and demand as required by California foreclosure laws.

132. Because of all of these substantial procedural and substantive defects in the second NoD, it is void.

133. Plaintiffs seek this Court's exercise of its equitable powers to confirm the second NoD is void, cancel the instrument as without any effect.

## CAUSE OF ACTION SIX
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (15 U.S.C. § 1681s-2(b))
### Against DITECH and the BNY TRUST

134. Plaintiffs hereby reincorporate all of the previously numbered paragraphs into this cause of action as if they were each individually pled herein.

135. DITECH is a "person" and "furnisher of information" to credit reporting agencies ("CRAs") as defined in the Fair Credit Reporting Act (15 U.S.C. § 1681 et. seq.), and was at all times mentioned in this cause of action, a person furnishing credit information to CRAs regarding the Mortgage and Plaintiffs' responsibility under the Mortgage.

136. With full knowledge that Plaintiffs' Note was unsecured and not within the scope of the authority of either DITECH or the BNY TRUST, DITECH did falsely report to the three major credit reporting agencies ("CRAs"), TRANSUNION, LLC. ("TransUnion"), EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian"), and EQUIFAX, INC. ("Equifax"), in that DITECH falsely reported to the three CRAs that (1) the BNY TRUST was the

PATEL | STILWELL, LLP
Attorneys at Law
San Diego, California

owner of the note, (2) that the BNY TRUST was the beneficiary of the DoT; (3) that DITECH was authorized to execute the security under the DoT through the foreclosure process under Civil Code section 2924, et. seq., and (4) that DITECH had lawfully initiated a non-judicial foreclosure of the Property.

137.   DITECH either made these false reports to the three CRAs with full knowledge that the information supplied was false or negligently breached its duty to provide CRAs with credible and accurate information by failing to confirm the information supplied was correct and accurate prior to or subsequent to its disclosure to the CRAs.

138.   DITECH repeatedly made these false disclosures to the three CRAs on a monthly basis from January, 2013, through present day.

139.   Because DITECH had knowledge of the laws regarding transfers to REMIC trusts after their closing date, and had no reasonable belief that the DoT was valid, DITECH, who is charged with the knowledge of its principle the BNY TRUST who also had these knowledges, cannot avail itself of the qualified privilege that normally is provided to the filing of a NoD's, and the credit reporting that the Note was secured, and that DITECH had a right to collect.

140.   The Note was not an asset of the BNY TRUST because the Assignment was the subject of a prohibited transaction, and the DoT had been voided by its recording.

141.    DITECH did not have authority to initiate a non-judicial foreclosure of the Property as described herein above.

142.   DITECH, even at the direction and on behalf of the BNY TRUST, did not lawfully initiate, or lawfully conduct, a non-judicial foreclosure, because DITECH and the BNY TRUST were complete strangers to the Note, and had no authority to conduct such an illegal action.

///

///

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

PATEL | STILWELL, LLP

Attorneys at Law
San Diego, California

143.   On April 3rd, 2015, Plaintiffs informed DITECH, the BNY TRUST, and the CRAs that the information was false and disputed the statements to the CRAs.

144.   The CRAs conducted their normal investigation, part of which was informing DITECH and the BNY TRUST of the dispute. Plaintiffs did not receive any notification from the CRA's indicating that their claim was without merit. Despite this notification through the statutory "filtering system" created by 15 U.S.C. § 1681s-2(b), DITECH and the BNY TRUST continued to assert their false claims to the CRAs, and continued to furnish false information to the CRAs subsequent to DITECH's and the BNY TRUST's being so notified of their falsity.

145.   DITECH and the BNY TRUST were both on notice, and continually furnished false information with full knowledge of its falsity.

146.   As a direct and proximate cause of this false reporting of information, Plaintiffs have been prejudiced by their credit being negatively affected and further harmed.   Plaintiffs have thereby sustained general and special damages in an amount to be proven at trial.

### CAUSE OF ACTION SEVEN
### NEGLIGENCE

### Against DITECH and the BNY TRUST

147.   Plaintiffs hereby reincorporate all of the previously numbered paragraphs into this cause of action as if they were each individually pled herein.

148.   Penal Code section 530.5 placed a duty on DITECH to abstain from unlawfully utilizing Plaintiffs' private personal information.

149.    DITECH, breached that duty by utilizing Plaintiffs' name, address, and note account number in the unlawful and unauthorized execution and filing of the NoD.  DITECH did not have the authority to execute and record the NoD, and therefore the publication is not privileged.

///

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

150. DITECH also breached their duty to exercise reasonable care in the review of PLANTIFFS' loan modification application once DITECH had agreed to consider PLANTIFFS' application by (1) using false, deceptive, or misleading representations or means in connection with the collection of the Note; and (2) using unfair or unconscionable means to collect or attempt to collect a debt by (i) claiming that the mortgage is secured when it is not, (ii) claiming that the Property is subject to foreclosure when it is not, (iii) threatening to foreclose against the Property if payment is not made when they do not have a valid security interest in the Property to execute, (iv) filing of the NoD's against the title of the Property when they had no authority to do so, (v) violating the California Homeowner Bill of Rights section 2924.17.

151. As a direct and proximate cause of DITECH's acts, Plaintiffs have sustained general and special damages, including without limitation devaluation of the Property, in an amount to be proven at trial.

**CAUSE OF ACTION SEVEN**
**SLANDER OF TITLE**
**Against All Defendants**

152. Plaintiffs hereby reincorporate all of the previously numbered paragraphs into this cause of action as if they were each individually pled herein.

153. As described herein above, AWL and its successors including the BNY Trust and assigns, with full knowledge that it was not the actual "Lender" but acting in its capacity as a California Licensed Mortgage Originator, and illegally encumbered the property by recording the DoT in direct violation of California Business and Professions Code section 10234, with full knowledge of the DOT's falsity. The recording was therefore not subject to any privilege under Civil Code section 47.

154. Further, DITECH, with full knowledge of the rules restricting transfers to REMIC trusts after their closing date, did record the NoD with full knowledge that the BNY TRUST did not have the rights under the void DOT to

PATEL | STILWELL, LLP
Attorneys at Law
San Diego, California

grant DITECH, MTC and their predecessors-in-interest, the authority to execute and record the NoD. The recording was therefore done by DITECH and MTC and their predecessors-in-interest without any reasonable belief that it was valid, and is therefore not subject to any privilege under Civil Code section 47.

155. The DoT is void as an illegal contract made with illegal consideration. The Assignment of deed is void as a prohibited transaction under the Internal Revenue Code.

156. The DoT placed a large encumbrance on the title to the Property which disparages the title to the Property greatly. The NoD's place the Property's title in a distressed character which likewise and further devalues and disparages the title to the Property.

157. Because of the malicious executions and recording of the DoT, Assignment, and NoD's by DITECH and MTC, Plaintiffs' Property has been disparaged greatly and devalued substantially because of the weight of the DoT encumbrance and the distressed character of the title. These damages were the direct and proximate result of the recording of the DoT and NoD's by the DITECH and MTC in an amount to be proven at trial. Further, the BNY TRUST is additionally vicariously liable for the proximate damages caused by its agent DITECH and MTC.

158. Furthermore, the aforementioned recording was motivated by oppression, fraud, and malice on the part of all Defendants, and each of them, in that they committed all these acts with full knowledge of, or reckless disregard for, the fact that they neither owned the rights to the Mortgage or were authorized to record the statements. Therefore, the awarding of exemplary and punitive damages is justified.

///

///

///

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

PATEL | STILWELL, LLP
Attorneys at Law
San Diego, California

PATEL | STILWELL, LLP

Attorneys at Law
San Diego, California

## CAUSE OF ACTION EIGHT
### QUIET TITLE
**Against All Defendants**

159.   Plaintiffs hereby reincorporate all of the previously numbered paragraphs into this cause of action as if they were each individually pled herein.

160.   Plaintiffs seek to quiet title against all the claims of Defendants**.** There is a dispute as to who is the title holder, both legally and equitably. Plaintiffs allege a full and complete offer to pay all sums due to any Defendant upon a factual determination by this Court that, in fact, any sum is due to any Defendant.

161.   Plaintiffs seeks to quiet title as of   July 11th, 2005, the date of origination of the disputed contract deed of trust, and seeks a judicial declaration that the title to the Subject Property is vested in Plaintiffs alone and that the Defendants, and each of them, be declared to have no interest estate, right, title or interest in the subject property and that the Defendants, their agents and assigns, be forever enjoined from asserting any estate, right title or interest in the Property subject to Plaintiffs' rights.

162.    Plaintiffs states as his reasons for a date quieting title other than the date of the filing of this Complaint (C.C.P. § 761.020) as follows:

a.    The date of the execution of a disputed deed of trust sets forth the actual date that the title should be quieted in favor of Plaintiffs, that which is necessary to determine the dates of damages accrued;

b.    Title is in-arguably vested in Plaintiffs by grant deed prior to the execution of the disputed deed of trust, as such, upon a finding by this Court in favor of Plaintiffs, title must be quieted to Plaintiffs to determine each Defendant's role and liability from the earlier time title vested in Plaintiffs, and;

c.    Unknown third parties who may have legitimate claims and/or defenses to the subject property must have a date certain that sets forth their claims and/or defenses.

COMPLAINT FOR DAMAGES AND EQUITABLE
RELIEF

163.    Plaintiffs are currently the equitable owner of the Subject Property which has the legal description (above herein).

164.    Plaintiffs pray for the determination of the title of Plaintiffs against those adverse claims of each and every Defendant herein.

**CAUSE OF ACTION EIGHT**
**WRONGFUL FORECLOSURE**
**Against All Defendants**

165.    Plaintiffs hereby reincorporate all of the previously numbered paragraphs into this cause of action as if they were each individually pled herein.

166.    On or about December 23, 2016, MTC, at the direction of and on behalf of the BNY TRUST, sold the Property at a trustee's sale through nonjudicial foreclosure.   Plaintiffs are informed and believe and thereupon alleges that the BNY TRUST purchased the Property in a full credit bid.   Trustee conducted this sale in reliance on the DoT, which was void since July 20, 2005.   Plaintiffs thereby allege that neither MTC, nor the BNY TRUST, were authorized to conduct the trustee's sale herein.

167.    Without a valid DoT to authorize the execution and recording of the Foreclosure Documents and the execution of the Trustee's Sale, MTC, as the BNY TRUST's agent, was not authorized to execute and record the Foreclosure Documents, nor execute the Trustee's Sale.

168.    However, in spite of the void DoT and lack of any authority whatsoever, MTC, at the behest and direction of the BNY TRUST, conducted an illegal and unauthorized nonjudicial foreclosure of the Property on or about December 23, 2016 when the Property was sold at a public auction and MTC executed the Trustee's Deed upon sale.

169.    Plaintiffs allege that neither MTC, nor the BNY TRUST, had any right, title or interest in the Dot or the Property as security, thus, a controversy exists. Plaintiffs have standing to assert claims herein by virtue of being a party to

PATEL | STILWELL, LLP
Attorneys at Law
San Diego, California

COMPLAINT FOR DAMAGES AND EQUITABLE
RELIEF

the three-party contract that is the DoT, which MTC and the BNY TRUST have asserted as their authority to execute the illegal sale under.

170.    As a direct and proximate cause of this false claim to title and unauthorized foreclosure, Plaintiffs have been prejudiced by the unlawful and unauthorized sale of the Property to their detriment.   Plaintiffs have thereby sustained general and special damages in an amount to be proven at trial.

171.    Further, both the BNY TRUST and MTC have taken these actions with full knowledge of their unauthorized capacity, did these actions knowingly, willfully, and with intent to oppress Plaintiffs with malice, and therefore, Plaintiffs request this Court to award Plaintiffs exemplary and punitive damages as this Court deems appropriate.

## PRAYER

WHEREFORE, Plaintiffs pray for the following relief:

1.    For an order permanently enjoining DITECH, the BNY TRUST, and MTC from continuing its unfair business practices in violation of Business and Professions Code section 17200 as proven at trial;

2.    For an order canceling the Assignment;

3.    For an order canceling the DoT;

4.    For an order canceling the Second NoD;

5.    For general damages in the sum proven at trial;

6.    For special damages in the sum proven at trial;

7.    For statutory damages in the sum proven at trial;

8.    For punitive and exemplary damages in the sum proven at trial as determined proper by the Court;

9.    For prejudgment interest at a rate of 10% per annum;

10.    For post judgment interest at a rate of 10% per annum;

11.    For attorney's fees and costs of suit;

///

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**PATEL | STILWELL, LLP**
Attorneys at Law
San Diego, California

12.   For any other further relief the court may deem proper.

Dated:  January 6, 2017          **PATEL | STILWELL, LLP**


*/s/ Andrew R. Stilwell*
_____
ANDREW R. STILWELL, ESQ.
3160 Camino Del Rio South, Suite 313
San Diego, CA 92108
Telephone: (619) 940-6623
Email: AStilwell@PatelStilwell.com
Attorney for Plaintiffs

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial.

Dated:  January 6, 2017


*/s/ Andrew R. Stilwell*
_____
ANDREW R. STILWELL, ESQ.
Attorney for Plaintiffs

-37-          COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF