UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY D. PALMER and YOLANDA M. PALMER,<br><br>Plaintiffs,<br><br>v.<br><br>MTC FINANCIAL, INC., d/b/a TRUSTEE CORPS; THE BANK OF NEW YORK MELLON TRUST COMPANY N.A., as trustee for certificate holders of the Cwabs Inc., asset-backed certificates, series 2005-14; DITECH FINANCIAL, LLC, and DOES 1 through 10, inclusive,<br><br>Defendants. | No. 1:17-cv-00043-DAD-SKO<br><br>ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS<br><br>(Doc. Nos. 13, 16) |

**I.     Introduction**

After the foreclosure proceedings involving their residence in Fresno, California, plaintiffs Randy D. Palmer and Yolanda M. Palmer filed this action on January 10, 2017 against defendants MTC Financial, Inc. ("MTC Financial"), the Bank of New York Mellon Trust Company, N.A. ("BNY"), and Ditech Financial, LLC ("Ditech"). (Doc. No. 1.) In their complaint, plaintiffs present the following ten causes of action: (1) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, against BNY and Ditech; (2) violation of the Truth in Lending Act, 15 U.S.C. § 1641, against BNY; (3) violation of California's Rosenthal Act, Civil Code § 1788.1,

1

against BNY and Ditech; (4) violation of California's Business and Professions Code § 17200, *et seq.*, against all defendants; (5) cancellation of instrument against all defendants; (6) violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), against BNY and Ditech; (7) negligence against BNY and Ditech; (8) slander of title against all defendants; (9) quiet title against all defendants; and (10) wrongful foreclosure against all defendants. (*Id*. at 16–36.)

On February 14, 2017, defendants BNY and Ditech filed a motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Doc. No. 13.) On February 16, 2017, defendant MTC Financial filed a motion to dismiss also pursuant to Rule 12(b)(6). (Doc. No. 16.) On March 21, 2017, plaintiffs filed oppositions to the motions to dismiss and on March 28, 2017, defendants filed their replies. (Doc. Nos. 23, 24, 30, 31.)[1] The motions came before the court for hearing on April 4, 2017. Attorney Andrew Stilwell appeared telephonically on behalf of plaintiffs, attorney Martin Kosla appeared telephonically on behalf of defendant MTC Financial, and attorney Simon Feng appeared telephonically on behalf of defendants BNY and Ditech. (Doc. No. 34.) For the reasons set forth below, defendant's motion to dismiss will be granted and plaintiffs' complaint will be dismissed with leave to amend.

**I.     Requests For Judicial Notice**

The court will first address the requests for judicial notice relating to the pending motions to dismiss. Defendants BNY and Ditech request that the court judicially notice the following five documents: (1) an Assignment of Dead of Trust recorded on October 7, 2011 (Exh. 1); (2) a Substitution of Trustee recorded on March 25, 2015 (Exh. 2); (3) a Notice of Trustee's Sale recorded on December 4, 2015 (Exh. 3); (4) a Trustee's Deed Upon Sale recorded on December 29, 2016 (Exh. 4); and (5) a printout from the United States Patent and Trademark Office webpage (Exh. 5). (Doc. No. 14.) Defendant MTC Financial requests that the court judicially notice four of the same documents defendants BNY and Ditech seek judicial notice of (Exhs. 1–4), and, in addition, request judicial notice of the following documents: (1) the Deed of Trust recorded on July 20, 2005 (Exh. A); (2) the Notice of Default and Election to Sell Under Deed of

---

[1] On April 4, 2017, the same day as the noticed hearing on the motions to dismiss, plaintiffs filed a notice of new authority. (Doc. No. 33.)

Trust recorded on October 27, 2011 (Exh. C); (3) the Notice of Default and Election to Sell Under a Deed of Trust recorded on March 25, 2015 (Exh. E). (Doc. No. 18.) Plaintiff has objected to both requests for judicial notice filed by defendants on the grounds that while the existence of the documents in the public record may be the proper subject of judicial notice, the truth of the statements contained in those documents is not. (Doc. Nos. 25 and 26.)

Defendants' requests for judicial notice will be granted pursuant to Federal Rule of Evidence 201. However, in granting those requests the court merely takes notice of the existence of these documents, but not for the disputed facts contained therein. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001); *MGIC Indem .Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

Plaintiffs ask that judicial notice be taken of several documents as well. First, plaintiffs seek judicial notice of the same Notice of Trustee's Sale recorded on December 4, 2015 that the court has already judicially noticed. (Doc. No. 27 at 6–8.) The court therefore grants this request. Second, plaintiffs seek judicial notice of only the first page of the two page Trustee's Deed Upon Sale recorded on December 29, 2016 that the court has already judicially noticed, followed by a single page for an Assignment of Deed of Trust for un unrelated property in Pismo Beach, California. (Doc. No. 27 at 10–11.) Plaintiffs also seek judicial notice of an Assignment of Deed of Trust for an unrelated property in Orange County, California. (*Id*. at 13–14.) The court will deny these requests as either unnecessary in light of the granting of defendants' request for judicial notice or as not pertaining to documents relevant to resolution of the pending motion to dismiss.

Finally, plaintiffs seek judicial notice of the Bill Analysis for the Assembly Committee on Bank and Finance hearing held on January 12, 1998 regarding Assembly Bill 1203 (Kukendall), as amended January 7, 1998. (Doc. No. 27 at 16–17.) Plaintiffs state that this Assembly Bill became California Business and Professions Code § 10234, which they claim prohibits residential table-funding. (Doc. No. 1 at 7–8.) The court grants this request that judicial notice be taken of the legislative materials from Assembly Bill 1203, as these are "matters of public record" that may properly be judicially noticed by the court. *Northstar Fin. Advisors Inc. v. Schwab*

3

*Investments*, 779 F.3d 1036, 1042 (9th Cir. 2015); *see also Stone v. Sysco Corp.*, No. 1:16-cv-01145-DAD-JLT, 2016 WL 6582598, at *3 (E.D. Cal. Nov. 7, 2016) (taking judicial notice of legislative materials).

**II.    Background**

On or about July 2005, plaintiffs obtained a mortgage loan on a property located at 8315 North Thyme Way, Fresno, CA 93720 in the amount of $520,000. (Doc. No. 18 at 6-7.) The mortgage was secured by a deed of trust listing America's Wholesale Lender as the lender, Recon Trust Company, N.A. as the trustee, and the Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary and nominee for the lender. (*Id.* at 6–22.) On October 7, 2011, MERS assigned the deed of trust to defendant BNY, as trustee for the certificateholders of the CWABS Inc., asset-backed certificates, series 2005-14. (*Id.* at 24–25.) On March 16, 2015, defendant BNY substituted defendant MTC Financial, d/b/a Trustee Corps, as trustee under the deed of trust. (*Id.* at 32.) On December 28, 2016, after two notices of default and election to sell were recorded, defendant MTC Financial foreclosed on the property located at 8315 North Thyme Way with defendant BNY purchasing it. (*Id.* at 42–43.)

Plaintiffs now claim the foreclosure sale of their home was wrongful and void because the original deed of trust was invalid and the product of an illegal table-funded loan whereby America's Wholesale Lender was not the actual lender, but instead acted as a broker to bring in anonymous outside funding from a third party. (Doc. No. 1 at 5.) Plaintiffs also allege in their complaint that the assignments were void because MERS did not have the power outside of its capacity as nominee to assign the note. (*Id.* at 10.) Finally, plaintiffs allege that defendant BNY failed to disclose the assignments. (*Id.* at 11.)

**III.   Legal Standard**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to

4

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court is permitted to consider material which is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiffs' complaint necessarily relies on them, and matters of public record. *Lee*, 250 F.3d at 688–89.

**IV. Analysis**

*1. California Civil Code §§ 47, 2924(D) Privilege*

Defendant MTC Financial moves to dismiss the claims brought by plaintiffs against it on the ground that its conduct as a foreclosure trustee is privileged under California Civil Code §§ 47, 2924(D). (Doc. No. 17 at 12–14.) Plaintiffs oppose on the grounds that a void deed of trust negates defendant MTC Financial's status as trustee and negates the power to sell. (Doc. No. 24 at 6.)

California Civil Code § 2924(a) states in pertinent part:

> Where . . . in any transfer in trust made after July 27, 1917, of a like estate to secure the performance of an obligation, a power of sale is conferred upon the mortgagee, trustee, or any other person, to be exercised after a breach of the obligation for which that mortgage or transfer is a security, the power shall not be exercised . . . until all of the following apply:
>
> (1) The trustee, mortgagee, or beneficiary, or any of their authorized agents shall first file for the record . . . a notice of default. . . .

* * *

/////

5

>     (3) . . . [A]fter the lapse of the three months described in paragraph
>     (2), the mortgagee, trustee, or other person authorized to take the
>     sale shall give notice of sale, stating the time and place thereof. . . .

Subsection (d) of that statute further provides that "[t]he mailing, publication, and delivery of notices as required by this section" and the "[p]erformance of the procedures set forth in this article" are considered "privileged communications pursuant to [Cal. Civ. Code § 47]." The broad privilege conferred by California Civil Code § 47 bars liability for "all torts except malicious prosecution," and is "absolute in nature." *Silberg v. Anderson*, 50 Cal. 3d 205, 212, 215 (1990); *see also Simmons First National Bank v.* Lehman, Case No. 13-cv-02876-DMR, 2015 WL 1503437, at *5 (N.D. Cal. Apr. 1, 2015) (slander of title claim precluded by § 47); *Narog v. New York Community Bank*, No. CIV S-10-3265 JAM CKD PS, 2011 WL 4591219, at *2 (E.D. Cal. Sept. 30, 2011) ("Plaintiff's claims of negligence against MTC are therefore barred by [§ 47's] privilege applied to foreclosure trustees in performance of foreclosure procedures under the statute.").

On March 16, 2015, defendant BNY substituted defendant MTC Financial, d/b/a Trustee Corps, as trustee under the deed of trust. (Doc. No. 18 at 32.) MTC Financial then issued a notice of default and election to sell, a notice of trustee's sale, and finally foreclosed on plaintiffs' home. (*Id*. at 34–43.) In their complaint plaintiffs allege that

> DITECH, with full knowledge of the rules restricting transfers to REMIC trusts after their closing date, did record the NOD with full knowledge that the BNY Trust did not have rights under the void DOT to grant DITECH, MTC and their predecessors-in-interest, the authority to execute and record the NOD. The recording was therefore done by DITECH and MTC and their predecessors-in-interest without any reasonable belief that it was valid, and is therefore not subject to any privilege under Civil Code section 47.

(Doc. No. 1 at 33.) Plaintiffs, however, have failed to plead any facts supporting the suggestion that defendant MTC did not have a reasonable belief that the recording was valid. Likewise, the complaint alleges that "BNY TRUST and MTC have taken these actions with full knowledge of their unauthorized capacity, did these action knowingly, willfully, and with intent to oppress Plaintiffs with malice." (*Id*. at 37.) Again, however, plaintiffs have failed to plead any facts that support the suggestion that MTC acted with knowledge of its alleged unauthorized capacity or

6

that it proceeded with malice. Accordingly, pursuant to §§ 47 and 2924(d), defendant MTC Financial's actions as a foreclosure trustee were absolutely privileged.

Accordingly, plaintiffs' claims against MTC Financial will be dismissed with leave to amend.

*2. Wrongful Foreclosure*

Defendants BNY and Ditech move to dismiss the wrongful foreclosure claim brought against them on the grounds that the deed of trust, the assignment of the deed of trust, and the notice of default in question are not void. (Doc. No. 13 at 21.) Defendants specifically argue that the deed of trust is not void because, contrary to plaintiffs' theory of the case, America's Wholesale Lender was the actual lender on plaintiffs' loan, the deed of trust specifically lists America's Wholesale Lender as the lender on the loan, and America's Wholesale Lender is a subsidiary of Countrywide. (Doc. No. 13 at 11.)

In opposing these arguments, plaintiffs assert that the deed of trust is void because it is the product of illegal residential table-funding. (Doc. No. 23 at 7, 9–10.) In this regard, plaintiffs argue the loan was table-funded because that the dead of trust lists America's Wholesale Lender as the lender on the loan when it actually was not. (*Id*. at 8–9.) Finally, plaintiffs cite the bill analysis to AB 1203 in support of their argument that California Business and Professions Code § 10234 protects against encumbering residential property with table-funded loans. (*Id*. at 8.) The bill analysis that plaintiffs cite, however, is explicit in stating that "there are no consumer implications to this proposal as it addresses commercial table funding only." (Doc. No. 27 at 17.)

Rather, plaintiffs' table-funding theory appears to be based The Real Estate Settlement Procedures Act ("RESPA"), which shields home buyers "from unnecessarily high settlement charges by certain abusive practices." 12 U.S.C. § 2601(a). Table funding, when it includes a kickback from the "true lender" to the ostensible lender, is prohibited by RESPA. The Ninth Circuit has explained:

> "Table-funding" is defined as a "settlement at which a loan is funded by a contemporaneous advance of loan funds and an assignment of the loan to the person advancing the funds." *See, e.g.*, 24 C.F.R. § 3500.2. In a table-funded loan, the originator closes the loan in its own name, but is acting as an intermediary for

7

> the true lender, which assumes the financial risk of the transaction. The timing of the assignment is therefore sometimes pivotal in determining whether a residential mortgage loan is table-funded because the determinative question is who bears the risk of the transaction.

*Easter v. Am. W. Fin.*, 381 F.3d 948, 955 (9th Cir. 2004) (footnote omitted). However, "bona fide secondary market transactions, in which closed loans are purchased by investors, are exempt from RESPA." *Brewer v. Indymac Bank*, 609 F. Supp. 2d 1104, 1116 (E.D. Cal. 2009) (citing 24 C.F.R. § 3500.5(b)(7)).

Plaintiffs appear to believe that America's Wholesale Lender was not the "true lender" in a table-funded transaction, the loan and deed of trust were therefore void, and that the "true lender" is now without recourse to recover on the loan. However, plaintiffs have not alleged any specific non-conclusory facts to support the bare contention that America's Wholesale Lender was not the lender of the loan. Plaintiffs do not allege facts supporting the notion that another party funded the subject loan and their complaint does not identify who they believe the actual lender is. "Furthermore, to the extent that RESPA provides for a private cause of action, which Plaintiffs have not directly pled, the damages are for treble damages and attorneys' fees, not the nullification of the loan." *Warwick v. Bank of N.Y. Mellon*, No. 2:15-cv-03343-SS, 2016 WL 2997166, at *19 (C.D. Cal. May 23, 2016); *see also Bloom v. Martin*, 865 F. Supp. 1377, 1384 (N.D. Cal. 1994) (no private right of action for disclosure violations under 12 U.S.C. § 2603).

Plaintiffs also argue that the assignment of the deed of trust is void because MERS executed the assignment, without identifying its capacity, when the deed of trust listed MERS as "beneficiary" and "nominee for the Lender." (Doc. No. 1 at 9–11.) In moving to dismiss defendants argue that plaintiffs lack standing to challenge the assignment, and, even if plaintiffs did have standing, their claims lack merit. (Doc. No. 13 at 11–12.)

The California Supreme Court recently explained that the borrower generally will not have grounds to object to the assignment of a promissory note and deed of trust:

> A promissory note is a negotiable instrument the lender may sell without notice to the borrower. The deed of trust, moreover, is inseparable from the note it secures, and follows it even without a separate assignment. ... [¶] A deed of trust may thus be assigned one or multiple times over the life of the loan it secures. But if the

8

> borrower defaults on the loan, only the current beneficiary may
> direct the trustee to undertake the nonjudicial foreclosure process.

*Yvanova v. New Century Mortgage Corp.*, 62 Cal. 4th 919, 927–28 (2016) (internal citations omitted); *see also Creative Ventures v. Jim Ward & Assoc.*, 195 Cal. App. 4th 1430, 1445–46 (2011) (a promissory note is a negotiable instrument that the lender may sell without notice to the borrower). Nevertheless, borrowers, even when not parties to an assignment, have standing to sue for wrongful foreclosure if they can show that the assignment is void. *Yvanova*, 62 Cal. 4th at 923.

However, "a postclosing assignment of a loan to an investment trust that violates the terms of the trust renders the assignment voidable, not void." *Yhudi v. Impac Funding Corp.*, 1 Cal. App. 5th 1252, 1259 (2016). Two recent California Court of Appeal decisions—*Yhudai*, 1 Cal. App. 5th at 1254 and *Saterbak v. JPMorgan Chase Bank, N.A.*, 245 Cal. App. 4th 808 (2016)—are instructive in this regard. In both cases, the deeds of trust named MERS as the beneficiary and as nominee for the lenders. *Yhudai*, 1 Cal. App. 5th at 1254; *Saterbak*, 245 Cal. App. 4th at 811. The deeds of trust in both cases were sold to securitized investment trusts formed under New York law, and in both cases, MERS, as nominee for the lenders, executed and recorded assignments of the deeds of trust into the securitized trusts after the closing date of the trusts. *Id*. In both cases, the court found that the assignment "voidable." *Id*. Here, the deed of trust establishes MERS's authority to assign the DOT. There is no authority for the proposition that MERS was required to list its capacity "as nominee for" in the assignment of the deed of trust in order for it to be valid. Here, plaintiffs have not alleged that the assignments were recorded after the closing date of the trusts.[2] However, even if they had, the assignment would be at most "voidable." *Id*.

---

[2] In their opposition to the pending motion to dismiss plaintiffs argue that they "have alleged that the REMIC herein closed in 2005 and the assignment happened in 2011. . . . the assignment's September 26, 2011 date makes the transfer five years, six months, and twenty-six days too late." (Doc. No. 23 at 21) (citing Doc. No. 1 at 9–10.) However, these allegations do not appear in plaintiffs' complaint. Rather, the complaint merely alleges that the deed of trust became void on its recording date of July 20, 2005 because it allegedly was unlawfully the result of a table-funded mortgage. (Doc. No. 1 at 9.)

9

Accordingly, plaintiff lacks standing to pursue a wrongful foreclosure claim based solely on the assignment of the deed of trust. Since amendment to this claim would be futile to the extent that is based upon a void assignment theory, this claim will be dismissed without leave to amend.

### 3. Fair Debt Collection Practices Act

Defendants BNY and Ditech move to dismiss the claim brought against them under the Fair Debt Collection Act (FDCA) on the grounds that they are not debt collectors within the meaning of the Act. (Doc. No. 13 at 14.) Plaintiffs oppose dismissal of this claim, arguing that defendants did not have a right to foreclose because the deed of trust was illegal and void. (Doc. No. 23 at 10.) Plaintiffs have also filed a notice of new authority directing the court's attention to the recent decision in *Dowers v. Nationstar Mortg., LLC*, 852 F.3d 964 (9th Cir. 2017), which plaintiffs claim applies to their FDCPA claim. (Doc. No. 33 at 2.)

"[T]he law is well-settled . . . that creditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA." *Hepler v. Washington Mut. Bank, F.A.*, No. 2:07-cv-04804-CAS, 2009 WL 1045470, at *4–5 (C.D. Cal. Apr. 17, 2009); *see also Knockum v. BAC Home Loans Servicing, L.P.*, No. 2:12-cv-00416-GEB-DAD, 2012 WL 3730755, at *4 (E.D. Cal. Aug. 27, 2012) ("foreclosing on the subject property pursuant to a Deed of Trust is not the collection of a debt within the meaning of the FDCPA."); *Usher v. Greenpoint Mortg. Funding, Inc.*, No. 2:10-cv-00952-LKK-DAD, 2010 WL 4983468, at *7 (E.D. Cal. Dec. 2, 2010) (same). However, the Ninth Circuit recently held that a FDCPA claim under 15 U.S.C. § 1692(f), unlike claims brought under §§ 1692c(a)(2), 1692d, and 1692e, "applies to the enforcement of a security interests such as a deed of trust." *Dowers*, 852 F.3d at 969.

Therefore, plaintiffs' FDCPA claim under § 1692e will be dismissed because neither defendant BNY nor defendant Ditech are debt collectors within the meaning of that term for purposes of § 1692e. Since amendment to this claim would be futile, it will be dismissed with prejudice. *See Klamath-Lake Pharm. Ass'n*, 701 F.2d at 1293.

/////

However, plaintiffs also bring an FDCPA claim under § 1692f which, under the recent decision in *Dowers*, is not subject to dismissal on the grounds that these defendants were not acting as bill collectors. The relevant subsection of that provision regulates nonjudicial foreclosure activity and prohibits:

> [t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement.

15 U.S.C. § 1692f(6). In their complaint, plaintiffs in essence allege that defendants BNY and Ditech took, and threatened to take, nonjudicial foreclosure action when there was no present right to possession of the property claimed as collateral. However, as discussed above, plaintiffs have not adequately pled that the deed of trust in question was void. For this reason alone this claim is subject to dismissal. Moreover, even if plaintiffs' were to sufficiently plead their claim based upon a table-funding theory, such a claim could not nullify the loan. Accordingly, amendment of plaintiffs' FDCPA claim under § 1692f would be futile and it will therefore be dismissed without leave to amend.

    *4. California's Rosenthal Fair Debt Collection Practices Act*

Defendants BNY and Ditech move to dismiss the claim brought against them under the Rosenthal Fair Debt Collection Practices Act ("RFDCPA") for the same reasons argued in support of dismissal of plaintiffs' FDCPA claim — specifically, the RFDCPA does not apply in the foreclosure context. (Doc. No. 13.) Plaintiffs oppose this aspect of the motion to dismiss on the same grounds as they opposed dismissal of their FDCPA claim, arguing that defendants did not have a right to foreclose because the deed of trust was illegal and void. (Doc. No. 23 at 10.)

The RFDCPA prohibits a host of unfair and oppressive methods of collecting debt. However, to be liable under the RFDCPA a defendant must fall under its definition of "debt collector." *Izenberg v. ETS Svcs., LLC*, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008). Foreclosure pursuant to a deed of trust does not constitute debt collection under the RFDCPA. *See Hamilton v. Bank of Blue Valley*, 746 F. Supp. 2d 1160, 1177 (E.D. Cal. 2010) ("A purported

RFDCPA claim is barred in that complaint points to only non-judicial foreclosure, which as discussed above is proper pursuant to the DOT's power of sale provision."); *Usher*, 2010 WL 4983468 at *6–7 (dismissing RFDCPA claim in foreclosure case); *Izenberg*, 589 F. Supp. 2d at 1199; *see also Rosal v. First Fed. Bank of California*, 671 F. Supp. 2d 1111, 1135 (N.D. Cal. 2009) (dismissing RFDCPA claim as to all defendants in foreclosure case); *Ricon v. Recontrust Co.*, No. 3:09-cv-00937-IEG-JMA, 2009 WL 2407396, at *4 (S.D. Cal. Aug. 4, 2009) (dismissing with prejudice plaintiff's unfair debt collection claims in foreclosure case); *Pittman v. Barclays Capital Real Estate, Inc.*, No. 3:09-cv-00241-JM-AJB, 2009 WL 1108889, at *3 (S.D. Cal. Apr. 24, 2009) (dismissing with prejudice plaintiff's Rosenthal Act claim in a foreclosure case because a "residential mortgage loan does not qualify as a 'debt' under the statute"); *Gallegos v. Recontrust Co.*, No. 3:08-cv-02245-WQH-LSP, 2009 WL 215406, at *3 (S.D. Cal. Jan. 28, 2009) (dismissing RFDCPA claim in a foreclosure case).

Because residential mortgage loans do not fall within the RFDCPA, amendment would be futile. Accordingly, plaintiffs' RFDCPA cause of action will be dismissed without leave to amend.

*5. Truth in Lending Act*

Defendant BNY moves to dismiss the claim brought against it under the Truth in Lending Act on the grounds that the claim is barred by TILA's one-year statute of limitations. (Doc. No. 13 at 14.) Plaintiffs argue that BNY is equitably barred from asserting the statute of limitations because "it was precisely their deceitful failure to disclose that caused the claim, and kept Plaintiffs from discovering it earlier." (Doc. No. 23 at 16.)

A plaintiff seeking equitable tolling of the applicable statute of limitations must allege "specific facts explaining the failure to learn the basis for the claim within the statutory period." *Pedersen v. Greenpoint Mortg. Funding, Inc.*, 900 F. Supp. 2d 1071, 1079 (E.D. Cal. 2012). A plaintiff cannot simply rely on the same factual allegations to both show a violation of the federal statute and to toll the limitations period for bringing a claim under the statute. *Jacob v. Aurora Loan Servs.*, No. 3:10-cv-01789 SC, 2010 WL 2673128, at *3 (N.D. Cal. July 2, 2010). As one district court has explained,

> To allow tolling whenever a plaintiff alleges an improper disclosure would render the TILA limitations period completely meaningless. *Jacob*, 2010 WL 2673128 at *3. Vargas must allege more than the alleged TILA violation itself; the violation and tolling are not one and the same.

*Vargas v. JP Morgan Chase Bank, N.A.*, 30 F. Supp. 3d 945, 949 (C.D. Cal. 2014). Here, plaintiffs' Truth in Lending Act claim is based upon the allegation that

> Plaintiffs have never received any written notification from the BNY TRUST that the Mortgage was transferred to the BNY TRUST as required under 15 U.S.C. § 1641(g), and therefore Plaintiffs is informed and believe and thereupon alleges that the BNY TRUST failed to notify Plaintiffs that the Mortgage was transferred to the BNY TRUST by assignment with thirty days of that transfer.

(Doc. No. 1 at 18.) This is the sole basis of what the court has interpreted as plaintiffs' equitable tolling argument. That claim is not a sufficient basis upon which to equitably toll the statute of limitations.

Therefore, plaintiffs' Truth in Lending Act claim brought under § 1641(g) appears to be time-barred as pled and will be dismissed with leave to amend.

### 6. Fair Credit Reporting Act

Plaintiffs bring their Fair Credit Reporting Act ("FRCA") claim under 15 U.S.C. § 1681s-2(b). (Doc. No. 1 at 29.) Subsection 1681s–2(b) provides that, after receiving a notice of dispute, the furnisher [of credit information to a consumer reporting agency ("CRA") ] shall:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the [CRA] pursuant to section 1681i(a)(2) ...;
>
> (C) report the results of the investigation to the [CRA];
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other [CRAs] to which the person furnished the information ...; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1) ... (i) modify ... (ii) delete[or] (iii) permanently block the reporting of that item of information [to the CRAs].

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009). However, "[t]hese

obligations are triggered 'upon notice of dispute'—that is, when a person who furnished information to a [credit reporting agency] receives notice from the [credit reporting agency] that the consumer disputes the information." *Id*.

Here, plaintiffs allege that they "informed DITECH, the BNY TRUST, and the CRAs that the information was false and disputed the statements to the CRAs." (Doc. No. 1 at 31.) Plaintiffs further allege that the "CRAs conducted their normal investigation, part of which was informing DITECH and the BNY TRUST of the dispute." (*Id.*) Plaintiffs' allegations in this regard are vague and conclusory. Moreover, plaintiffs do not allege in their complaint that they submitted a notice of dispute to either defendant Ditech or BNY. (Doc. No. 1 at 29–31.) Accordingly, plaintiff has failed to state a cognizable FCRA claim. *See Schneider v. Bank of Am. N.A.*, No. 2:11-cv-2953-LKK-DAD, 2012 WL 761975, at *8–9 (E.D. Cal. Mar. 6, 2012) (plaintiff failed to state a cognizable FCRA claim when it was not alleged that plaintiff submitted a notice of dispute to defendants); *Cross v. Wells Fargo Bank, N.A.*, No. 5:11-cv-00447 AHM (OPx), 2011 WL 6136734, at *8–9 (C.D. Cal. Dec. 9, 2011) ("Plaintiffs fail to state a claim under these sections because they do not allege that they disputed their credit ratings with any credit reporting agencies and do not allege that any agency subsequently notified Defendant of any such dispute."); *Zirelli v. BAC Home Loan Servicing, L.P.*, No. 2:11–cv–00305–GEB–DAD, 2011 WL 6100442, at *4 (E.D. Cal. Dec. 7, 2011) (dismissing FCRA claim where plaintiff failed to "allege that he disputed any negative information with a CRA or that notice of such dispute was provided to any Defendant."); *Von Brincken v. Mortgageclose.Com, Inc.*, No. 2:10–cv–2153–JAM–KJN, 2011 WL 2621010, at *5 (E.D. Cal. June 30, 2011) ("to succeed on such a claim, a plaintiff must allege that she had a dispute with a credit reporting agency regarding the accuracy of an account, that the credit reporting agency notified the furnisher of the information, and that the furnisher failed to take the remedial measures outlined in the statute.").

Because plaintiffs have failed to allege that defendants were notified of any dispute plaintiffs had regarding the accuracy of an account, their Fair Credit Reporting Act claim will be dismissed with leave to amend.

/////

14

*7. Negligence*

In their complaint plaintiffs allege a claim for negligence on the grounds that California Penal Code § 530.5 placed a duty on defendant Ditech to abstain from unlawfully utilizing plaintiffs' private information and that this duty was violated by the execution and filing of the notice of default and in the loan modification process. (Doc. No. 1 at 31–32.) Defendants BNY and Ditech move to dismiss this negligence claim on the grounds that, as a matter of law, defendants owe no duty of care to plaintiffs. (Doc. No. 13 at 19.)

The elements of negligence are "duty, breach of duty, causation, and damages." *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989); *see also McGarvey v. JP Morgan Chase Bank, N.A.*, No. 2:13-cv-01099-KJM-EFB, 2013 WL 5597148, at *7 (E.D. Cal. Oct. 11, 2013) ("Defendant owes plaintiff and those in similar circumstances a duty to exercise ordinary care in the loan modification process.").

However, a "financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Willis v. JP Morgan Chase Bank, N.A.*, ___ F. Supp. 3d___, 2017 WL 1349744, at * 4 (E.D. Cal. Apr. 5, 2017) (quoting *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (1991). Here, the execution and filing of the notice of default by defendant does not exceed the scope of its conventional role as a mere lender of money. Furthermore, plaintiffs' allegations that Ditech failed to exercise reasonable care in the loan modification process are conclusory and lack allegations of specific facts. (*See* Doc. No. 1 at 32.) Accordingly, this claim will be dismissed with leave to amend.

*8. Slander of Title*

Plaintiffs' slander of title claim is based on their often repeated allegations that defendants improperly filed the notice of default and deed of trust without having authority to do so. (Doc. No. 1 at 32-33.) Slander of title is "a tortious injury to property resulting from unprivileged, false, malicious publication of disparaging statements regarding the title to property owned by plaintiff, to plaintiff's damage." *Green v. Alliance Title*, No. 2:10-cv-00242-MCE-EFB (PS), 2010 WL 3505072, at *19 (E.D. Cal. Sept. 2, 2010) (quoting *Southcott v. Pioneer Title Co.*,

1  203 Cal. App. 2d 673, 676 (1962)). Thus, under California law, to state a claim for slander of
2  title, the plaintiff must allege facts establishing: (1) a publication; (2) which is without privilege
3  or justification; (3) which is false: and (4) which causes direct and immediate pecuniary loss.
4  *Manhattan Loft, LLC v. Mercury Liquors, Inc.*, 173 Cal. App. 4th 1040, 1050–51 (2009). Notices
5  such as those filed by defendants in this case pursuant to a non-judicial foreclosure action
6  constitute privileged communications. Cal. Civ. Code § 2924(d); *Marty v. Wells Fargo Bank*,
7  No. 2:10-cv-0555-GEB-DAD, 2011 WL 1103405, at *7 (E.D. Cal. Mar. 22, 2011); *Green*, 2010
8  WL 3505072, at *19; *Jackson v. Ocwen Loan Servicing*, LLC, No. 2:10-cv-00711-MCE-GGH,
9  2010 WL 3294397, at *4 (E.D. Cal. Aug. 20, 2010) ("The Notices of Default and Trustee's Sale
10 filed by Defendants . . . are privileged publications because their filings were required by
11 California law.").
12      Here, plaintiffs generally allege "malicious executions and recording of the DOT,
13 Assignment, and NOD." (*See* Doc. No. 1 at 33.) However, plaintiffs have alleged no facts in
14 their complaint suggesting that defendants disseminated unprivileged, false or malicious
15 communications regarding title to the subject property.
16      Accordingly, plaintiffs' slander of title claim will be dismissed with leave to amend.
17      *9.  Quiet Title*
18      Defendants BNY and Ditech argue that plaintiffs' quiet title claim fails because plaintiffs
19 must have paid any debt owed on the property before they can institute a quiet title action. (Doc.
20 No. 13 at 21.) Plaintiffs, citing the decision in *Sciarratta v. U.S. Bank N.A.*, 247 Cal. App. 4th
21 552, 562 (2016), argue that "[w]here there are illegal or false encumbrances on the property, no
22 payment is necessary because encumbrances should not have been on title to begin with." (Doc.
23 No. 23 at 13–14.)
24      Generally, "a mortgagor cannot quiet his title against the mortgagee without paying the
25 debt secured." *Shimpones v. Stickney*, 219 Cal. 637, 649 (1934); *see also Aguilar v. Bocci*,
26 39 Cal. App. 3d 475, 477 (1974); *Kelley v. Mortgage Electronic Registration*, 642 F. Supp. 2d
27 1048, 1057 (N.D. Cal. 2009) ("Plaintiffs have not alleged ... that they have satisfied their
28 obligation under the Deed of Trust. As such, they have not stated a claim to quiet title.").

However, if a plaintiff "properly allege[s] the foreclosure was void and not merely voidable, tender [is] not required to state a cause of action for quiet title." *Sciarratta*, 247 Cal. App. 4th at 568. Such is the case when "the trustee's deed is void on its face." *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 112–13 (1997).

Here, in their complaint plaintiffs alleges that they would "pay all sums due to any Defendant upon a factual determination by this Court that, in fact, any sum is due." (*See* Doc. No. 1 at 34.) It can be reasonably inferred from this allegation that plaintiffs do not dispute that they have not yet tendered the sums necessary to pay off the mortgage in question. Moreover, plaintiffs have alleged no facts that would explain why they are entitled to the property even though they borrowed hundreds of thousands of dollars secured by it, which they have failed to pay back. As discussed above, plaintiffs' theory that the deed of trust is the result of an alleged unlawful table-funding scheme, even if properly pled and proven, would not void the mortgage loan. In addition, as noted, plaintiff does not have standing to challenge the assignment of the deed of trust. For all of these reasons plaintiffs' have not alleged a cognizable quiet title claim. Because amendment with respect to this claim would be futile, for the reasons explained above, it will be dismissed without leave to amend.

*10. Cancellation of Instruments*

By way of their complaint, plaintiffs also seek to cancel the assignment of the deed of trust, the deed of trust, and the notice of default, as void pursuant to California Civil Code § 3412. (Doc. No. 1-1 at 8–9.) That statute provides:

> A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause *serious injury to a person against whom it is void or voidable*, may, upon his application, be so adjudged, and ordered to be delivered up or canceled.

Cal. Civ. Code § 3412 (emphasis added). However, it has been recognized that "the request to cancel [a written instrument] is a request for a remedy, not a cause of action or claim." *Yazdanpanah v. Sacramento Valley Mortg. Group*, No. 3:09-cv-02024-SBA, 2009 WL 4573381, at *6 (N.D. Cal. Dec. 1, 2009); *see also Lawson v. CitiCorp Trust Bank, FSB*, No. 2:11-cv-01163-KJM-KJN PS, 2011 WL 3439223, at *7 (E.D. Cal. Aug. 5, 2011) (concluding that "cancellation

17

of an instrument is an equitable remedy" and listing cases holding the same). Because plaintiffs have yet to adequately plead any cognizable cause of action, they cannot seek cancellation of any instrument as a remedy. Therefore, to the extent plaintiffs have attempted to allege a separate cause of action for cancellation of instruments, that claim will be dismissed without leave to amend since amendment would be futile.[3]

*11. California's Business and Professions Code § 17200*

Defendants BNY and Ditech move to dismiss plaintiffs' claim brought against them under California's Unfair Competition Law ("UCL"), codified at California Business and Professions Code § 17200 *et seq.*, on the grounds that plaintiffs have not alleged that they suffered an actual property loss or that they paid any fees they claim as damages. (Doc. No. 13 at 16.) Plaintiffs oppose dismissal of this claim on the grounds that an illegal encumbrance on the property, the foreclosure documents, and the subsequent foreclosure all diminished the value of their property. (Doc. No. 23 at 15.)

California's Business and Professions Code § 17200 broadly defines unfair competition to include any business act or practice that is unlawful, unfair or misleading. The Ninth Circuit has observed that

> § 17200 does not proscribe specific practices. Rather, . . . it defines "unfair competition" to include "any unlawful, unfair or fraudulent business act or practice." . . . Its coverage is "sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law."

*Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001) (quoting *Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal. 4th 163, 180 (1999)).

A UCL cause of action cannot be maintained if other causes of actions based on the same factual allegations fail. *See, e.g.*, *Glenn K. Jackson Inc.,* 273 F.3d at 1203 ("[T]he breadth of § 17200 does not give a plaintiff license to 'plead around' the absolute bars to relief contained in other possible causes of action by recasting those causes of action as ones for unfair competition."); *Krantz v. BT Visual Images, L.L.C.*, 89 Cal. App. 4th 164, 178 (2001) ("[Claims]

---

[3] Should plaintiffs elect to file an amended complaint, they may seek cancellation of instruments as a remedy with respect to any claim to which that remedy may apply.

18

for relief under the unfair competition law stand or fall depending on the fate of the antecedent substantive causes of action.").

As explained above, plaintiffs have failed to state any other cognizable claim. Accordingly, their UCL claim will also must also be dismissed with leave to amend.

**V.    Leave to Amend**

The court has carefully considered whether plaintiffs are capable of amending their complaint to state cognizable claims for relief. A district court should provide leave to amend upon granting a motion to dismiss unless it is clear that the complaint could not be saved by any amendment. *See Mueller v. Auker*, 700 F.3d 1180, 1191 (9th Cir. 2012) (*citing Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)). "Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility." *California Architectural Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1472 (9th Cir. 1987); *see also Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1144 (9th Cir. 2015) (leave to amend is properly denied if the proposed amendment lacks merit or would be futile in saving plaintiff's suit); *Klamath–Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that while leave to amend shall be freely given, the court does not have to allow futile amendments).

Applying these standards, the court has concluded that it may be possible for plaintiffs to cure the pleading deficiencies noted in this order with respect to certain claims as noted above. As to other claims, as noted above, the court has concluded that amendment would be futile and plaintiffs should not re-allege the latter claims in any amended complaint they elect to file.

**VI.    Conclusion**

For the reasons set forth above:

1) Defendants' motions to dismiss (Doc. No. 13 and 16) are granted;

2) Plaintiffs are granted leave to file an amended complaint consistent with this order within twenty-one days of the service of this order; and

/////

/////

19

3) Any failure by plaintiffs' to file an amended complaint within the time provided will likely result in the dismissal of this action for failure to prosecute and failure to abide by the court's orders.

IT IS SO ORDERED.

Dated: **May 26, 2017**

_____
UNITED STATES DISTRICT JUDGE